# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFERY M. GOODWIN, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3: 13-cv-0148 |
| ) | |
| v. ) | United States District Judge |
| ) | Kim R. Gibson |
| STEVEN R. GLUNT, Superintendent; ) | |
| MAREA LEAKY, Physician's Assistant; ) | United States Magistrate Judge |
| and SCI HOUTZDALE MEDICAL ) | Cynthia Reed Eddy |
| DEPARTMENT, ) | |
| ) | |
| Defendants. | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I. RECOMMENDATION**

It is respectfully submitted that the Motion For Injunction filed by Plaintiff (ECF No. 8) be denied.

**II. REPORT**

A. Procedural History

This matter comes before the Court for consideration of a motion for preliminary injunctive relief filed by Plaintiff, Jeffery M. Goodwin, a pro se prisoner, currently housed at the State Correctional Institution ("SCI") at Houtzdale. In this motion, which is filed along with Plaintiff's Complaint at the outset of this litigation, Plaintiff requests that his "previous medical status" be restored.

According to Plaintiff, in December 2007, while housed at SCI-Greene, he was diagnosed with degenerative arthritis in this right knee. He was "prescribed restriction from all sporting

1

activities, bottom bunk / tier status, a knee sleeve (for stability) and pain-killers as needed." Mot. at ¶ 3. In 2009, Plaintiff was transferred to SCI-Dallas and in August of 2012, he was transferred to SCI-Retreat. Both of these institutions allowed Plaintiff to retain his medical status.

On November 19, 2012, Plaintiff was transferred to SCI-Houtzdale, his current location. Thereafter, on November 21, 2012, Plaintiff's medical status was rescinded "after a less than thorough examination." As of November 25, 2012, Plaintiff has been forced to carry his property to various cells on the second floor and is "forced to painfully utilize an unsafe ladder to the top bunk to sleep." Mot. at ¶ 8.

Plaintiff moves the Court for a "Medical Injunction Order" to restore his previous medical needs status. The relief sought in this motion closely parallels the claims made by Plaintiff in his complaint, and demands this injunctive relief at the very outset of this litigation, before the Complaint has even been served upon the Defendants.

B.    Standard of Review

Inmate *pro se* pleadings, like those filed here, which seek extraordinary, or emergency relief, in the form of preliminary injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure and are judged against exacting legal standards. As the United States Court of Appeals for the Third Circuit has explained:

> Four factors govern a district court's decision whether to issue a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief, (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*Gerardi v. Pelullo*, 16 F.3d 1363 (3d Cir. 1994) (quoting *SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244, 1254 (3d Cir. 1985)).

A preliminary injunction is not granted as a matter of right. *Kerschner v. Mazurkewicz*, 670 F.2d 440, 443 (3d Cir. 1982). It is an extraordinary remedy. Given the extraordinary nature of this form of relief, a motion for preliminary injunction places precise burdens on the moving party. As a threshold matter, "it is a movant's burden to show that the 'preliminary injunction must be the only way of protecting the plaintiff from harm.'" *Emile v. SCI-Pittsburgh*, No. 94-974, 2006 WL 2773261 at *6 (W.D. Pa. Sept. 24, 2006) (quoting *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992)). Thus, when considering such requests, courts are cautioned that:

> [A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis deleted). Furthermore, the Court must recognize that 'an [i]njunction is an equitable remedy which should not be lightly indulged in, but used sparingly and only in a clear and plain case.' *Plain Dealer Publishing Co. v. Cleveland Typographical Union #53*, 520 F.2d 1220, 1230 (6th Cir. 1975), cert. denied, 428 U.S. 909 (1977). As a corollary to the principle that preliminary injunctions should issue only in a clear and plain case, the Court of Appeals for the Third Circuit has observed that 'upon an application for a preliminary injunction to doubt is to deny." *Madison Square Garden Corp. v. Braddock*, 90 F.2d 924, 927 (3d Cir. 1937).

*Emile*, 2006 Wl 2773261, at *6.

Accordingly, for an inmate to sustain his burden of proof that he is entitled to a preliminary injunction under Federal Rule of Civil Procedure 65, he must demonstrate both a reasonable likelihood of success on the merits and that he will be irreparably harmed if the requested relief is not granted. *Abu-Jamal v. Price*, 154 F.3d 128, 133 (3d Cir. 1998). If the

movant fails to carry this burden on either of these elements, the motion should be denied since a party seeking such relief must "demonstrate both a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir. 1989) (emphasis added).

Furthermore, in assessing a motion for preliminary injunction, the court must also consider the possible harm to other interested parties if the relief is granted. *Kershner*, 670 F.2d at 443. In addition, a request for injunctive relief in the prison context must be viewed with great caution because of the intractable problems of prison administration. *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995). Finally, a party who seeks an injunction must show that the issuance of the injunctive relief would not be adverse to the public interest. *Emile*, 2006 WL 2773261, at * 6 (citing *Dominion Video Satellite, Inc. v. Echostar Corp.*, 269 F.3d 1149, 1154 (10th Cir.2001)).

In the past, inmates have frequently sought preliminary injunctive relief compelling prison officials to take certain actions with respect to them during the pendency of a lawsuit. Yet, such requests, while often made, are rarely embraced by the courts. Instead, applying Rule 65's exacting standards courts have frequently held that prisoner-plaintiffs have not shown that they are entitled to use a motion for preliminary injunction as a vehicle to compel prison officials to provide them with some specific relief and services pending completion of their lawsuits. *See, e.g., Messner v. Bunner*, No. 07–112E, 2009 WL 1406986 (W.D. Pa. May 19, 2009) (denying inmate preliminary injunction); , No. 08–128E, 2008 WL 4500482 (W.D. Pa. Oct.7, 2008) (denying inmate preliminary injunction); , No. 04–974, 2006 WL 2773261, *6 (W.D.P a. Sept. 24, 2006) (denying inmate preliminary injunction).

4

In particular, courts have been reluctant to accept inmate invitations to use preliminary injunctions as a means to judicially prescribe specific medical courses of treatment for inmates. In such instances, courts have typically declined such requests citing the inmate's failure to either demonstrate irreparable harm; *Rivera v. Pennsylvania Dep't. Of Corrections*, 346 F. App'x 749 (3d Cir. 2009), *Rush v. Correctional Medical Services*, Inc., 287 F. App'x 142 (3d Cir. 2008), or show a likelihood of success on the merits. *Quinn v. Palakovich*, 204 F. App'x 116 (3d Cir. 2006).

C.    Discussion

While the Court does not in any way diminish Plaintiff's complaints and concerns, a review of the motion for preliminary injunction leads the Court to conclude that Plaintiff has not made the demanding showing required by Rule 65 for this extraordinary relief. At the outset, the Court finds that Plaintiff has not yet met his threshold obligation of showing reasonable probability of success on the merits. The Court begins by observing that the gravamen of Plaintiff's complaint is that prison officials have violated his rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to his medical needs. Plaintiff faces an exacting burden in advancing this Eighth Amendment claim against prison officials in their individual capacities. To sustain such a claim, he must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* "Deliberate indifference"

5

is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

*Beers–Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. *See Jones v. Beard*, 145 F. App'x 743 (3d Cir.2005) (finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.) In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.' *Farmer v. Brennan*, 511 U.S. 825, 841 (1994). A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.' *Id*. at 837." *Garvey v. Martinez*, 08–2217, 2010 WL 569852, at *6 (M.D. Pa. Feb.11, 2010).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate medical care in accordance with this standard, Plaintiff is required to allege facts that demonstrate (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference to a serious medical need involves the

"unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation. *Estelle*, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. *Clark v. Doe*, 2000 WL 1522855, at *2 (E.D. Pa. Oct.13, 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. *See e.g. Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')." *Gindraw v. Dendler*, 967 F. Supp. 833, 836 (E.D. Pa. 1997).

Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; *see, e.g., Ham*

7

*v. Greer*, 269 F. App'x 149 (3d Cir. 2008); *James v. Dep't of Corrections*, 230 F. App'x 195 (3d. Cir. 2007); *Gillespie v. Hogan*, 182 F. App'x 103 (3d Cir. 2006); particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in *Estelle v. Gamble,* 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation.".... [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care.... Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

*James*, 230 F.App'x. at 197–198. (citations omitted).

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983; *see e.g., Gause v. Diguglielmo*, 339 F. App'x 132 (3d Cir. 2009) (dispute over choice of medication does not rise to the level of an Eighth Amendment violation); *Innis v.*

*Wilson,* 334 F. App'x 454 (3d Cir. 2009) (same); *Ascenzi v. Diaz,* 247 F. App'x 390 (3d Cir.2007) (same), since "the exercise by a doctor of his professional judgment is never deliberate indifference." *Gindraw v. Dendler*, 967 F. Supp. 833, 836 (E.D. Pa.1997) (citations omitted).

In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional medical judgment. *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

These guiding principles, which determine the ultimate merits of inmate Eighth Amendment claims, also frequently define the availability of preliminary injunctive relief in such cases. State inmates in Pennsylvania have in the past often invited federal courts to entertain preliminary injunctions directing their jailers to provide them with specially tailored treatment protocols. Yet, these requests, while frequently made, have rarely been embraced by the courts. *Rivera v. Pennsylvania Dep't. Of Corrections*, 346 F. App'x 749 (3d Cir. 2009); *Rush v. Correctional Medical Services, Inc.*, 287 F. App'x 142 (3d Cir. 2008); *Quinn v. Palakovich,* 204 F. App'x 116 (3d Cir.2006).

In this case, much of Plaintiff's argument in his motion for preliminary injunction amounts to little more than a disagreement between an inmate and doctors, which as a matter of law fails as a constitutional claim *see, e.g., Gause v. Diguglielmo*, 339 F. App'x 132 (3d Cir. 2009). The gravamen of Plaintiff's motion is devoted to his dispute with the SCI-Houtzdale Medical Department and its decision to rescind Plaintiff's medical status and, therefore, Plaintiff

has not shown a substantial likelihood of success on the merits of his claims warranting a preliminary injunction in this case.

Accordingly, because of Plaintiff's low likelihood of success on the merits of his claims, the Court suggests that the remaining factors need not be addressed and Plaintiff's motion for an injunction ordering Defendants to restore his previous medical status be denied.

### III. CONCLUSION

For all the foregoing reasons, it is recommended that the Motion for Preliminary Injunction filed by Plaintiff be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed until September 9, 2013, to file objections. Failure to timely file objections will constitute a waiver of any appellate rights. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.

    *s/ Cynthia Reed Eddy*
    Cynthia Reed Eddy
    United States Magistrate Judge

Dated: August 23, 2013

cc:    JEFFERY M. GOODWIN
      DG-0487
      SCI Houtzdale
      P.O. Box 1000
      209 Institution Drive
      Houtzdale, PA 16698-1000